## Case No. 9,455.

### MERCIER v. LACHENMEYER.

[28 Leg. Int. 325;[1] 8 Phila. 152; 3 Leg. Gaz. 316; 1 Leg. Gaz. Rep. 279; 4 Am. Law T. Rep. U. S. Cts. 226.]

Circuit Court, E. D. Pennsylvania. Oct. 2, 1871.

PRINCIPAL AND AGENT — SPECIAL AGENT—ACTS WITHIN SCOPE OF INSTRUCTIONS—SHIPPING—CHARTER-PARTY.

1. James T. Abbott & Co. were the agents employed by Otto Lachenmeyer to charter a vessel on behalf of John Lachenmeyer, with specific instructions as to the kind of vessel to be obtained, the ports of sailing and discharge, etc. They holding themselves out as agents of Lachenmeyer, chartered the vessel of John Mercier, the libellant, but altered the terms of the charter-party authorized by the respondents, who disavowed such new charter-party and notified the libellant of such disavowal. *Held,* that James T. Abbott & Co. were special agents, and only their acts within the scope of their instructions are binding upon their principal.

2. There being shown · no act or declaration of the principal, from which an enlargement of this limited power of the agents can be presumed, the respondents cannot be charged with the obligation of a contract, to which they did not, by express authorization or legal implication, yield their assent.

[Appeal from the district court of the United States for the Eastern district of Pennsylvania.]

McKENNAN, Circuit Judge. James T. Abbott & Co. were ship agents at St. Thomas, and were the correspondents of Edmund A. Souder & Co., of Philadelphia. Otto Lachenmeyer, one of the respondents, was in the employment of E. A. Souder & Co., and in conducting their correspondence with James T. Abbott & Co., authorized them to charter a vessel for his father, John Lachenmeyer, to carry lumber from St. Mary's,

Georgia, to Montevideo, sending them a printed form of charter-party used in the business of E. A. Souder & Co., limiting the freight rates to be paid to $19 to $20 gold "flat," per M. feet, and, if absolutely necessary, to add a gratuity of $50 to the master, and with the privilege of ordering the vessel to a port on the Uraguay not above Paysander or to Rosario on the Parana, at $2 per M. feet additional freight. This order was renewed several times by Otto Lachenmeyer, modified only by an enlargement of the limit to $21 gold, and an optional change of the place of loading to Fernandina or Lachlisin's Mills. On the 23d of December, 1869, James T. Abbott & Co. chartered, at St. Thomas, the libellant's vessel, the St. George, and, in the name of Otto Lachenmeyer, entered into a charter-party with him, by which he was to receive $21 gold per M. freight, a percentage of 5 per cent. per M. and, if the destination of the vessel was changed to Rosario, Fray Rentos or Paysander, an additional freight piece of $2.50 per M. feet. In pursuance of this charter, the libellant immediately sailed to St. Mary's where he was notified that the respondents disavowed the charter-party, as having been made in violation of instructions to James T. Abbott & Co., and that lading would not be furnished on the footing of it. The libellant awaited at St. Mary's the expiration of his lay days and until the 9th of March following, refusing any other engagement of his vessel, and has filed his libel to recover the demurrage stipulated by the charter party, and the damages arising from its non-fulfilment by the respondents.

The libellant can recover only on the footing of the contract made with him by James T. Abbott & Co. If it substantially embodies the terms for which they were authorized by the respondents to stipulate, it is the respondent's contract, and the libellant had a right to call upon them to fulfil it. That an agent can bind his principal only within the extent of his authority, and that this must be ascertained, at their own peril, by those who deal with him, is an elementary principle of the law of agency. In its application, it is relaxed only where the principal, by his acts or declarations, or by a general substitution of the agent for · himself in the transaction of the kind of business entrusted to him, authorizes the presumption that the agent is invested with unrestricted discretion as to the subject matter of the agency, or at least with power to bind his principal to the extent to which he assumes to act for him.

What then is the relation in which the parties stand to each other. It is plainly such as ordinarily results from the exercise of authority by one who is employed to perform a service for another, under special instructions and with limited powers. James T. Abbott & Co. were the agents employed to charter a vessel in behalf of John

[1] [Reprinted from 28 Leg. Int. 325, by permission.]

Lachenmeyer, with specific instructions as to the kind of vessel to be obtained, the ports of sailing and discharge, the price to be paid for freight and the amount of gratuity to the master. They were, therefore, special agents, and only their acts within the scope of their instructions are binding upon their principal. No act or declaration of the principal has been shown, from which an enlargement of this limited power of the agents can be presumed, and it is hardly necessary to add that no such effect is due to the fact, if it be a fact, that James T. Abbott & Co. were the exclusive shipping brokers of Edmund A. Souder & Co., at St. Thomas. The latter were the intermedium through whose connection with James T. Abbott & Co. the negotiation was conducted and their employment was effected, but certainly neither the nature nor extent of their relations can operate to charge the respondents with the obligation of a contract, to which they did not, by express authorization or legal implication, yield their assent. In point of fact, such an assumption is repelled by the charter-party itself, for upon its face James T. Abbott & Co. describe themselves as the agents of Otto Lachenmeyer, not of E. A. Souder & Co. There was no room for misconception by James T. Abbott & Co. They knew who their principal was. They represented themselves to libellant as acting for Otto Lachenmeyer, and thus the libellant was warned of the duty, and informed of the means, of ascertaining the nature and limitations of the contract which they were authorized to make with him. Nor was there any ambiguity in the instructions given to the agents. What may be the meaning of the term "flat," which has supplied a subject of such earnest discussion and animadversion by the counsel,—this much is clear: That $21 gold per M. feet and $50 currency to the master were authorized to be paid, and an additional $2 per M., if the port of discharge was changed by the charterer to the Uruguay or Parana. Now, instead of these rates, to which James T. Abbott & Co. were limited by their instructions, they stipulated for $21 gold, and 5 per cent. primage also in gold—which is a form of gratuity to the master—and $2.50, if the destination of the vessel was changed. Is such a contract, in the execution of which the agents did not observe their instructions, and provided for payments in excess of those to which they were limited, to be regarded as the engagement of their principal? Obviously not; and of this the libellant is chargeable with notice, because he dealt avowedly with representatives, and was bound, at his peril, to know that they kept within the line of their authority.

Although these considerations are decisive against the libellant, an additional objection is made to his recovery, which was not urged in the district court, and which, it is therefore argued, is not available to the respondents now, as the whole case is brought into this court and is heard de novo, and as no assignment of specific errors is required, all the questions arising upon the pleadings, and proofs are legitimate subjects of consideration. The objection now urged is distinctly presented by the answer of the original respondent, and seems to have led to the libellant's motion, which was ordered to stand as a supplemental libel against John Lachenmeyer. It has not been waived and may, therefore, be pressed at any stage of the controversy. As before stated, Otto Lachenmeyer was merely the organ of his father, John Lachenmeyer, in the correspondence in relation to the charter. He so declares himself in explicit terms, and his correspondents are asked to exert their offices only for the benefit and in the behalf of John Lachenmeyer. He did not propose that they should make any engagements for him. John Lachenmeyer was their principal, whom alone they had power to bind. But the charter-party was executed in the name of Otto Lachenmeyer as the charterer, and John Lachenmeyer is not a party to it. It is not then the contract of Otto Lachenmeyer, because it was unauthorized by him. Nor is it the contract of John Lachenmeyer, because he is not named in it and it does not purport to bind him. This is an awkward dilemma, either horn of which is fatal to the libellant.

The decree of the district court dismissing the libel is affirmed, with costs to be taxed against the libellant.